IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ERICA FOLDEN,

          Plaintiff,

v.                                     CIVIL ACTION NO. 3:25-0271

SAFEbuilt, LLC,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant SAFEbuilt, LLC's Motion to Dismiss Plaintiff's Complaint. ECF No. 6. Plaintiff Erica Folden opposes the motion. For the following reasons, the motion is **GRANTED**.

**I.**
**FACTUAL ALLEGATIONS AND**
**PROCEDURAL HISTORY**

This action arises from an employment dispute between Plaintiff, a West Virginia resident, and Defendant, a Delaware limited liability company that has its principal place of business in Loveland, Colorado. *Compl.* ¶¶1, 2, ECF No. 1-1; *Notice of Removal* ¶7, ECF No. 1. In her Complaint, Plaintiff states she was hired as a permit technician by Defendant in 2022. *Id.* ¶5. At that time, Plaintiff lived in Ohio, but she claims she requested Defendant's permission to move to West Virginia and work from home as an accommodation for various disabilities. *Id.* ¶¶8-11. Plaintiff alleges Defendant granted her request around November 2024, so she relocated and began working in West Virginia. *Id.* ¶10.

In February 2025, Plaintiff asserts Defendant notified her she needed to move back to Ohio to work because "it was not licensed to do business in West Virginia." *Id*. ¶11. Plaintiff states that Defendant told her she would be terminated if she did not move. *Id*. Subsequently, Plaintiff had a conversation with Defendant and sent a series of emails about her employment status. *Id*. ¶¶12-16. Although Plaintiff insists she never resigned from her position, she claims that Defendant contacted her on March 13, 2025, and told her the company had accepted her verbal resignation. *Id*. ¶17.

Thereafter, Plaintiff brought this action in the Circuit Court of Cabell County alleging Disability Discrimination under the West Virginia Human Rights Act (WVHRA) (Count I), Failure to Accommodate under the WVHRA (Count II), Interference with Plaintiff's Rights under the Family and Medical Leave Act of 1993 (FMLA) (Count III), Retaliation for Exercising Rights and Engaging in Protected Conduct under the FMLA (Count IV), and Promissory Estoppel (Count V).

Defendant removed the action to this Court on the basis of diversity pursuant to 28 U.S.C. § 1332(a), and then filed its Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for a lack of personal jurisdiction or, in the alternative, to dismiss Counts I and II pursuant to Rule 12(b)(6) for failure to state a claim.

## II.
## STANDARD OF REVIEW

In ruling on a Rule 12(b)(2) motion, the Court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Toombs v. Lowe's Home Centers, LLC,* Civ. Act. No. GLS-22-2244, 2023 WL 4593372, at *3 (D. Md. July 18, 2023) (recognizing that a court "can consider exhibits attached to the parties' pleadings without converting the Motion to a summary judgment motion" when resolving a Rule 12(b)(2) motion (citation omitted)); *see*

*also Time Share Vacation Club v. Atlantic Resorts, Ltd*., 735 F.2d 61, 66 n.9 (3d Cir. 1984) (stating "[a] Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings"). When an evidentiary hearing is not held, a plaintiff only must make a *prima facie* case that personal jurisdiction exists over the defendant. *OSRX, Inc. v. Anderson*, No. 23-1252, 2025 WL 1430648, at \*6 (4th Cir. May 19, 2025) (unpublished) (stating "[t]he *prima facie* standard applies when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint. Conversely, a district court can only require[] the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial if it conduct[s] an evidentiary hearing" (internal quotation marks and citations omitted)).

When a court relies solely on "the parties' pleadings, motion papers, and any affidavits," it must consider "the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.* (internal quotation marks and citation omitted). In other words, similar to the plausibility standard under Rule 12(b)(6), the court must decide if "the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt*., 935 F.3d 211, 226 (4th Cir. 2019) (citation omitted). If the plaintiff establishes a *prima facie* case of personal jurisdiction over a defendant at the preliminary stage of the proceedings, it does not prevent the issue from being revisited after a more complete record is available because "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following [the defendant's jurisdictional] challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted). Ultimately, the "plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Id*. at 268 (citation omitted).

As the Court has not held an evidentiary hearing in this case, the Court must determine whether Plaintiff has made a *prima facia* case that Defendant is subject to personal jurisdiction in West Virginia. This determination entails a two-step analysis. First, the Court must determine whether personal jurisdiction exists under West Virginia law. Second, it must evaluate whether exercising personal jurisdiction over Defendant comports with due process. *In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997) (citations omitted). As West Virginia's long-arm statute extends personal jurisdiction to the constitutionally allowable limits of the Due Process Clause of the Fourteenth Amendment, "the statutory inquiry necessarily merges with the Constitutional inquiry." *Id.* (citations omitted); *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (same) (citations omitted).

Personal jurisdiction over a defendant can be general or specific. *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018).[1] General jurisdiction can be met by "by demonstrating the defendant's continuous and systematic contact with the State." *Id.* (citation omitted). In this case, Plaintiff does not assert Defendant is subject to general jurisdiction. Rather, she argues it is subject to specific jurisdiction, which requires "a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). To meet the minimum contacts test, the plaintiff must "show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The underlying purpose of the rule

---

[1]A third type of jurisdiction may arise under Rule 4(k)(2) of the Federal Rules of Civil Procedure, but that section is not relevant here. *Id.*

is to prevent defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts" and being forced to defend themselves "in a forum where [they] should not have anticipated being sued." *Id*. (internal quotation marks and citations omitted).

The Fourth Circuit has devised a three-prong test to determine if specific personal jurisdiction exists: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id*. at 278 (internal quotation marks and citation omitted). Under the first prong, some nonexclusive factors courts have considered when resolving whether a defendant purposefully availed itself of conducting business in a State include:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC*, 911 F.3d at 198–99 (citing *Consulting Engrs Corp.*, 561 F.3d at 278). If the court finds through this analysis that the defendant did not purposefully avail itself "of the privilege of conducting business in the forum" then specific jurisdiction does not exist. *Consulting Engrs Corp.*, 561 F.3d at 278. However, if purposeful availment is shown, the court proceeds to the second prong. *Id*.

Under the second prong, the court must ask whether "the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form

the basis of the suit." *Id*. at 278-79 (citation omitted). If satisfied, the Court turns to prong three,

which allows the court to consider other factors as to "the appropriateness of the forum." *Id*. at

279. These factors encompass such things as:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id*. (citations omitted). In light of all these considerations, the Court must determine whether

Plaintiff has made a *prima facie* showing.

## III.
## DISCUSSION

In its motion, Defendant argues Plaintiff has not meet her burden to show a *prima facie*

case that it is subject to specific personal jurisdiction in West Virginia. In support of its position,

Defendant submitted an affidavit from Chad Hill, its Chief Human Resources Officer, who averred

that (1) Defendant "is not registered to do business in West Virginia," (2) it "has no offices in West

Virginia," and (3) "it has no agents in West Virginia." *Chad Hill Aff*. ¶¶1, 4-6 (May 14, 2025),

ECF No. 6-1. Mr. Hill also states that, although Defendant "has contracted to perform remote plan

review for the City of Wheeling, West Virginia," "[a]ll work performed by any person employed

by SAFEbuilt, LLC was performed outside of the State of West Virginia" and Plaintiff was not at

all involved in the project. *Id*. ¶¶7-9. Thus, Defendant argues the project is insufficient to show it

purposefully availed itself of the privilege of conducting activities within West Virginia and

Plaintiff cannot meet any of the factors under the first prong of the personal jurisdiction test.

Moreover, Defendant contends that it never told Plaintiff she could move to West Virginia to work

and, once it became aware of her move, it informed her she could not work from home because it

was not licensed in West Virginia. *Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl.*, at 3, ECF No. 7.

In response, Plaintiff argues her allegations, taken as true, show that Defendant agreed to allow her to work remotely in West Virginia as a disability accommodation. Plaintiff claims she justifiably relied upon this agreement, which serves as the basis for her claim of promissory estoppel. Plaintiff also asserts the fact Defendant permitted her to work in West Virginia for several months demonstrates it purposefully engaged in significant business activities in the State. Furthermore, Plaintiff states that its website promotes its services and solicits customers within West Virginia.

In considering the pleadings and the affidavit submitted by Defendant, the Court recognizes that determining whether minimum contacts exist "is not susceptible of mechanical application," *Consulting Eng'rs*, 561 F.3d at 278 (citing *Int'l Shoe*, 326 U.S. at 319), and the Court's analysis must be flexible and "proceed[] on a case-by-case basis," considering the "qualitative nature of . . . the defendant's connections to the forum state." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301–02 (4th Cir. 2012). With this backdrop, the Court considers the nonexclusive factors set forth above as guidance to assess whether Defendant purposefully availed itself of the privilege of conducting activities in West Virginia.

As to the first and second factors, there are no allegations (and Mr. Hill's affidavit affirms) that Defendant has any offices in West Virginia or that it is registered to do business here. Additionally, there is nothing to suggest Defendant owns property in West Virginia. Although Mr. Hill also attests Defendant has no agents in West Virginia, the Court accepts as true for purposes of this motion that Defendant agreed to allow Plaintiff to work here.

Likewise, under factors five through seven, the Court finds there are no allegations of a choice of law provision, of Defendant making an in-person contact with a West Virginia resident regarding a business relationship, or of contracts requiring performance in the State. Similarly, as to factor eight, Plaintiff does not claim she was engaging with clients in West Virginia or working on any projects directed at West Virginia clients. Thus, there is nothing to suggest that the communications between Plaintiff and Defendant involved business being transacted in West Virginia.

Turning next to the fourth factor, the Court must ask whether Defendant "deliberately engaged in significant or long-term business activities in the State." *Sneha Media & Ent., LLC*, 911 F.3d at 199 (citation omitted). As remote employees have become more common in recent years, courts have grappled with whether an employer purposefully engages in significant or long-term business activities in a State where a remote employee works. The answer to this question requires a very fact specific inquiry, and it must be decided on a case-by-case basis.

In support of its position, Defendant cites *Fields v. Sickle Cell Disease Association of American, Inc.*, 376 F. Supp.3d 647 (E.D. N.C. 2018). In *Fields*, the plaintiff accepted a position with the defendant, a Maryland corporation, on the condition she could work remotely to better manage her symptoms of Sickle Cell Disease. 376 F. Supp.3d at 650. The plaintiff's two independent contractor agreements with the defendant included a Maryland choice of law provision and a requirement that she work in the defendant's Maryland office five business days a month. *Id.* However, the rest of the month the plaintiff was free to work wherever she wanted. *Id.* After the plaintiff was discharged, she brought an action against the defendant in North Carolina, where she lived and performed her remote work, and the defendant moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *Id.* at 649-50.

In deciding that the defendant's connection to North Carolina was not strong enough to meet the purposeful availment test, the court found there was nothing in the parties' agreements that connected the defendant to North Carolina. *Id*. at 652. Instead, the activity that occurred in North Carolina was based upon the plaintiff's unilateral decision to work there and she did not allege in her complaint her work was directed at or involved North Carolina. *Id*. at 652-653. Under these circumstances, the Court found the defendant did not have a substantial connection to North Carolina and, thus, personal jurisdiction did not exist. *Id*. at 654. On appeal, the Fourth Circuit affirmed the decision in an unpublished per curiam opinion "for the reasons stated by the district court." *Fields v. Sickle Cell Disease Assoc. of Am., Inc.*, 770 Fed. Appx. 77 (4th Cir. May 3, 2019) (per curiam).

As in *Fields*, there are no allegations in this case that Plaintiff was soliciting any clients in West Virginia or working on any West Virginia projects. In her Response, however, Plaintiff attempts to distinguish *Fields* by arguing that Defendant in this case specifically granted her request to live and work in West Virginia as a disability accommodation and, therefore, it was a mutual and not a unilateral decision. As such, Plaintiff claims she relied upon the parties' agreement and Defendant should be estopped from changing its position, a claim not made in *Fields*.

Although Plaintiff emphasizes her estoppel claim in her Response, she does not explain how the fact she has a claim for promissory estoppel subjects Defendant to personal jurisdiction. Plaintiff's argument that Defendant should be estopped from changing its position that she could work in West Virginia is not itself evidence of purposeful availment. Rather, promissory estoppel is her theory of liability. Nevertheless, the Court finds *Fields* is distinguishable in that Plaintiff alleges she had an agreement with Defendant to specifically work in West Viginia and the plaintiff

in *Fields* was given the choice to live wherever she pleased so long as she worked from the Maryland office five days a month.

Despite this difference, approximately three years after *Fields* was decided, the Honorable Thomas E. Johnston implicitly found in *Clarke v. Tango Networks, Inc.*, Civ. Act. No. 2:21-00546, 2021 WL 6095328 (S.D. W. Va. Dec. 23, 2021), that an agreement by an employer to accommodate an employee's request to work remotely in West Virginia was not enough by itself to establish a defendant purposefully engaged in significant or long-term business activities. In *Clarke*, the court observed the employer-defendants were incorporated and had their principle places of businesses outside of West Virginia, and they had no presence here other than the employment of the plaintiff. 2021 WL 6095328, at *6. To support jurisdiction, the plaintiff argued that, when she was recruited, it was known she resided in West Virginia, and it was understood she would continue to work here. *Id.* She also stated she was supplied a laptop computer, had her internet and phone bills paid, and she engaged in a number of communications from West Virginia about the events that served as the basis for her claims. *Id.*

In considering whether personal jurisdiction over the defendants existed, the court was "hesitant to say Plaintiff's choice to reside here was solely a 'unilateral decision,' as [her employer] still chose to accommodate her choice." *Id.* at *8. Nevertheless, the court determined "it is readily apparent that her physical location had little to no bearing on her responsibilities," and it held the decision to accommodate the "[p]laintiff's decision to work remotely is not the sort of 'purposeful availment' contemplated by the personal jurisdiction jurisprudence." *Id.* Additionally, while Plaintiff performed her work in West Virginia—none of it was directed at West Virginia—and it was not akin to her employer "purposefully or directly creating contacts with the State itself." *Id.* (citation omitted). Furthermore, the court observed that, although employment decisions were felt

by Plaintiff in West Virginia, her claims arose elsewhere and "'the plaintiff cannot be the only link between the defendant and the forum.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (also stating "the relationship must arise out of the contacts that the 'defendant *himself*' creates with the forum State" ).[2] Lastly, the court stated that the employee handbook requiring employees to follow the laws of the State where they worked was insufficient to find purposeful availment. *Id*. at \*9.[3]

As in *Clarke*, this Court is reluctant to say that Plaintiff made a unilateral decision to move to West Virginia as she alleges she requested it as a disability accommodation and Defendant agreed to it. Nevertheless, with respect to Plaintiff's presence in the State, that is where the rope connecting Defendant, Plaintiff, and this State ends. In addition to the fact Defendant has no physical presence in the State, there simply are no allegations Plaintiff worked with or solicited West Virginia businesses or clients, held any meetings here, or did anything on behalf of Defendant that was directed at West Virginia. Therefore, as to Plaintiff's remote work, the Court finds it is insufficient to find Defendant "deliberately engaged in significant or long-term business activities in the State" under the fourth factor.[4]

Lastly, the Court considers the third factor, which asks "whether the defendant reached into the State to solicit or initiate business." *Sneha Media & Ent., LLC*, 911 F.3d at 198 (citation omitted). In his affidavit, Mr. Hill avers that Defendant has a contract "to perform a remote plan

---

[2]*Walden*, 571 U.S. at 284.

[3]The court also found the plaintiff failed to establish personal jurisdiction over the other defendants, who were alleged to be joint employers. *Id*. at \*\*10-12.

[4]The Court observes that Plaintiff makes no argument that Defendant's remote plan review for the City of Wheeling constitutes a significant or long-term business activity in West Virginia. In fact, Plaintiff does not mention this work by Defendant at all in its Response to support her assertion personal jurisdiction exists.

review for the City of Wheeling, West Virginia," but he also states that Plaintiff is not involved in the project. *Id.* ¶¶7, 9. However, the affidavit stops short of saying it is the only time or the only work Defendant has performed on behalf of a West Virginia client, and it is silent on whether Defendant solicits clients in West Virginia. In addition, the Court finds the fact Defendant is not registered to do business in West Virginia is not dispositive of whether it could be soliciting and initiating business with a West Virginia client. Therefore, at this point, the Court accepts as true Plaintiff's argument that Defendant is soliciting and initiating business in the State, and the Court finds this third factor is enough to push the needle in favor of purposeful availment under the first prong of the specific personal jurisdiction test.

Turning to the second prong, however, the Court finds Plaintiff does not fare as well. Under this prong, Plaintiff's WVHRA, FMLA, and promissory estoppel claims must arise under the activities Defendant has directed at West Virginia. Assuming the truth of Plaintiff's assertion Defendant is soliciting business in West Virginia, there is nothing connecting Plaintiff's work to whatever those activities are. As Plaintiff's claims arise solely from Defendant's decision she cannot work remotely from West Virginia and it has nothing to do with her soliciting, engaging, or performing any work directed at West Virginia, her claims necessarily could not have arisen from activities Defendant has directed at the State. Therefore, the Court finds Plaintiff has failed to meet the second prong of the personal jurisdiction test. Having failed this second step, the Court finds Plaintiff has not made a *prima facie* showing of personal jurisdiction over Defendant, and it is unnecessary to resolve the third prong and Defendant's arguments under Rule 12(b)(6).

## III.
## CONCLUSION

Accordingly, as Plaintiff has not made a *prima facie* showing, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. ECF No. 6.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      October 31, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE